UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| SYLVIA MARIE MCCRAW, | : | | |
| Plaintiff, | : | Civil Action No.: | 17-1011 (RC) |
| v. | : | Re Document No.: | 26 |
| NANCY A. BERRYHILL,<br>Acting Commissioner<br>of Social Security | : | | |
| Defendant. | : | | |

**MEMORANDUM OPINION**

**GRANTING DEFENDANT'S MOTION FOR JUDGMENT OF REVERSAL IN PART**

## I. INTRODUCTION

Plaintiff Sylvia Marie McCraw applied for disability insurance benefits and supplemental security income in 2013. After an Administrative Law Judge ("ALJ") rejected her application, Ms. McCraw sought review of that decision from this Court. On March 22, 2019, Magistrate Judge Robinson found that the ALJ failed to properly apply the treating physician rule and recommended that this Court remand the action to the Social Security Administration ("SSA") for the immediate award of benefits. This Court agrees with Magistrate Judge Robinson's ultimate conclusion that the ALJ failed to adequately explain why he accorded aspects of the treating physician's opinion little weight. However, this Court disagrees that the proper remedy is to award benefits. Instead, this Court grants Defendant's Motion for Reversal in part and remands this case to the SSA for further proceedings consistent with this Opinion.

## II. FACTUAL BACKGROUND

### A. Administrative Proceedings

In April 2013, Ms. McCraw applied for disability insurance benefits and supplementary security income. *See* R. & R. at 1, ECF No. 25. To qualify for either benefit under Titles II and XVI of the Social Security Act, a claimant must establish that he or she is disabled. *See* 42 U.S.C. §§ 401 *et seq*.; 42 U.S.C. §§ 1381 *et seq.* Ms. McCraw alleged that she was disabled because of "'spinal pain in the neck and low back[ ];' 'spasms in the back, arms, and neck, needing to walk with a cane, experiencing numbness in the right leg and foot, and having a hard time using the left leg[ ];' inability to sleep for '[more than] [two] hours at a time because of pain[,]' and bladder incontinence." R. & R. at 2 (quoting Judge Krasnow's Decision at 19, ECF No. 12-2). The SSA denied Ms. McCraw's claims for benefits initially and upon reconsideration. *See id.* Ms. McCraw then requested a hearing before an ALJ to review her claims. *Id.*

An SSA ALJ uses a five-step process to determine whether an applicant is disabled under the Social Security Act. *See Espinosa v. Colvin*, 953 F. Supp. 2d 25, 31 (D.D.C. 2013). First, the ALJ determines whether the claimant is "engaged in substantive gainful activity." *Id.* (quoting 20 C.F.R. § 404.1520(a)(4)(i)). If the claimant is engaged in such activity, the claimant is not disabled under the Act. If the claimant survives step one, the ALJ must then determine if the claimant has a "'medically determinable physical or mental impairment' that is proven 'by medically acceptable clinical and laboratory diagnostic techniques.'" *Id.* (quoting 20 C.F.R. § 404.1520(a)(4)(ii)). If the ALJ finds that the claimant has such a disability at step two, then the ALJ proceeds to step three and determines if the impairment is sufficiently severe. An impairment is severe if the severity of the impairment "meets or equals an impairment listed in

20 C.F.R. Part 404." *Id.* (quoting 20 C.F.R. § 404.1520(a)(4)(iii)). If the claimant meets both of these requirements, then the ALJ evaluates what the claimant's residual functional capacity is given the claimant's limitations. *Id.* "'Residual function capacity' is 'the most [the claimant] can still do despite [the] limitations' caused by the impairment." *Id.* (quoting 20 C.F.R. §§ 404.1520(a)(4), 404.1545(a)(1)). The ALJ uses the residual functional capacity to evaluate whether the claimant is unable to occupy a prior job at step four, and, if the claimant is unable to occupy said job, then whether the claimant can "adapt[ ] to 'other work that exists in the national economy'" at step five. *Id.* (quoting 20 C.F.R. § 404.1520(a)(4)(v)). If a claim survives these five steps, then the claimant is eligible for benefits. *See id.*

Here, ALJ Michael Krasnow found that Ms. McCraw's claims failed at steps three and four. *See* Judge Krasnow's Decision at 17–22. While ALJ Krasnow concluded that "claimant has the following severe impairments: degenerative disc disease with radiculopathy and essential hypertension," the ALJ found that these severe impairments did not "meet[ ] or medically equal[ ] the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1." *Id.* at 17–18. As a result, Ms. McCraw's claims fail at step three. Additionally, ALJ Krasnow concluded that Ms. McCraw has the "functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b)" with several exceptions. *Id.* at 18.

In making this determination, the ALJ considered the medical opinions of two state agency medical consultants, Drs. Ann Williams and Veronica Bedeau, as well as the opinion of Ms. McCraw's treating physician, Dr. Christopher Kalhorn. *Id.* at 20–21. ALJ Krasnow accorded "great weight" to Dr. Kalhorn's assessment of Ms. McCraw's impairments with several exceptions. *Id.* at 21. First, ALJ Krasnow gave minimal weight to Dr. Kalhorn's comments about Ms. McCraw's ability to work because "Dr. Kalhorn was not able to provide a clear

3

answer and did not define the frequency of likely absences caused by a flare of back pain." *Id.* ALJ Krasnow also afforded little weight to Dr. Kalhorn's opinion that Ms. McCraw could "lift and carry . . . less than 10 pounds" because the doctor had previously found that "the claimant could lift and carry 10 pounds frequently." *Id.* Additionally, ALJ Krasnow utilized Drs. Williams and Bedeau's assessment about Ms. McCraw's ability to stand because they "identified more restrictive limitations in terms of standing" than Dr. Kalhorn identified. *Id.* Specifically, the ALJ concluded that it was Dr. Kalhorn's opinion that Ms. McCraw could stand only six hours, whereas it was Drs. Williams and Bedeau's opinion that Ms. McCraw could stand for four hours. *Id.* at 20–21.

Taken together, ALJ Krasnow found that Ms. McCraw would be able to perform light work if she was not required to "stand and walk [more than] 4 hours in an 8-hour day," "sit 6 hours in an 8-hour day," "occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl," or "climb ladders, ropes, and scaffolds." *Id.* at 18. Ms. McCraw must also "avoid even moderate exposure to extreme cold, extreme heat, wetness, and hazards, such as dangerous machinery." *Id.* Given Ms. McCraw's functional capacity, ALJ Krasnow found that Ms. McCraw was capable of working as a telemarketer, a job she previously held. *See id.* at 22. Because Ms. McCraw's claims failed at step four, ALJ Krasnow concluded that Ms. McCraw was not disabled under the Act and denied her claim for benefits. *Id.* ALJ Krasnow had no occasion to assess Ms. McCraw's disability claim at step five. The SSA Appeals Council affirmed the ALJ's decision on March 28, 2017. *Id.* at 1–3.

### B. Magistrate Judge Robinson's Report and Recommendations

On May 26, 2017, Ms. McCraw sought this Court's review of ALJ Kransow's decision in accordance with 42 U.S.C. § 405(g), 28 U.S.C. § 1361, and 42 U.S.C. 1383(c)(3). *See generally*

4

Compl., ECF No. 1. On December 1, 2017, Ms. McCraw asked this Court to reverse the agency's judgment on the grounds that the ALJ's decision was not supported by substantial evidence in the record. *See generally* Pl.'s Mot. J. Reversal, ECF No. 18. Additionally, Ms. McCraw argued that the ALJ failed to appropriately apply the treating physician rule. *See id.* at 10–15. Had the ALJ applied the treating physician rule, Ms. McCraw argues that the ALJ would have found that substantial evidence supported the award of disability benefits. *Id.* Defendant then moved for affirmance of the ALJ's decision. *See generally* Def.'s Mot. J. Affirmance, ECF No. 21. Defendant argued that the ALJ appropriately applied the treating physician rule and correctly concluded that the weight of the evidence supported denying Ms. McCraw's claims. *Id.* at 9–12.

This Court referred the case to Magistrate Judge Robinson for full case management. On March 22, 2019, Magistrate Judge Robinson issued a Report and Recommendation recommending that the ALJ's opinion be reversed and remanded for the award of benefits. *See* R. & R. at 12. Because "the ALJ offered only a conclusory sentence fragment" to explain his reasoning, Magistrate Judge Robinson concluded that the ALJ had failed to appropriately apply the treating physician rule. *Id.* at 10. Had the treating physician rule been appropriately applied, Magistrate Judge Robinson found that Plaintiff would be entitled to the immediate award of benefits. *Id.* at 11–12.

Defendant objects to the Magistrate Judge's Report and Recommendation on two grounds. *See generally* Def.'s Obj. R. & R., ECF No. 26. First, Defendant contends that the ALJ made no error in applying the treating physician rule. *Id.* at 2–6. Instead, Defendant maintains that the ALJ's decision was supported by substantial evidence, and therefore should be affirmed. *Id.* In the alternative, Defendant argues that the case should not be remanded for the

issuance of benefits. *Id.* at 6–8.  Defendant argues that even if the ALJ misapplied the treating physician rule, the appropriate disposition is to remand the case for further proceedings because it is not clear from the record that disability benefits should be awarded. *Id.*  Plaintiff responds by urging this Court to adopt the Report and Recommendation in full. *See* Pl.'s Reply Obj. R. & R. at 1, ECF No. 27.  Plaintiff argues that the Magistrate Judge correctly concluded that the ALJ had misapplied the treating physician rule, and that remand for the award of benefits is appropriate. *Id.* at 2–7.

### III. LEGAL STANDARD

Under Local Civil Rule 72.3(b), a party may object to a magistrate judge's proposed findings and recommendations.  If a party objects, a district court reviews the portions of a magistrate judge's report that have been objected to de novo. *See* LCvR 72.3(c).  *See also Means v. District of Columbia*, 999 F. Supp. 2d 128, 132 (D.D.C. 2013).  "The district judge 'may accept, reject, or modify, in whole or in part, the findings and recommendations of the magistrate judge, or may recommit the matter to the magistrate judge with instructions.'" *Platt v. District of Columbia*, 168 F. Supp. 3d 253, 259–60 (D.D.C. 2016) (quoting LCvR 72.3(c)).

When, pursuant to the Social Security Act, a district court reviews an ALJ's disability findings, it must determine if the ALJ applied the correct legal standards. *See Butler v. Barnhart*, 353 F.3d 992, 999 (D.C. Cir. 2004) (citing 42 U.S.C. §§ 405(g), 1383(c)(3)).  A district court is not to reweigh the evidence and "determine . . . whether [the plaintiff] is disabled." *Id.*  Rather, the court "assess[es] only whether the ALJ's finding . . . is based on substantial evidence." *Id.*  "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  Said differently, the substantial evidence standard "requires more than a scintilla, but can be satisfied

by something less than a preponderance of the evidence." *Id.* (quoting *Fla. Mun. Power Agency v. F.E.R.C.*, 315 F.3d 362, 365–66 (D.C. Cir. 2003)). In this Circuit, "substantial-evidence review is highly deferential to the agency fact-finder." *Rossello ex rel. Rossello v. Astrue*, 529 F.3d 1181, 1185 (D.C. Cir. 2008). Additionally, "[t]he plaintiff bears the burden of demonstrating that the Commissioner's decision [was] not based on substantial evidence or that incorrect legal standards were applied." *Settles v. Colvin*, 121 F. Supp. 3d 163, 169 (D.D.C. 2015) (quoting *Muldrow v. Astrue*, No. 11-1385, 2012 WL 2877697, at *6 (D.D.C. July 11, 2012)).

## IV. ANALYSIS

### A. Application of the Treating Physician Rule

Defendant first objects to Magistrate Judge Robinson's conclusion that the ALJ failed to apply the treating physician rule. *See* Def.'s Obj. R. & R. at 2–6. Defendant argues that, contrary to the Magistrate Judge's finding, the ALJ correctly applied the rule by according the treating physician's opinion controlling weight when the treating physician's opinion was supported by substantial evidence. *Id.* at 3–4. In the few instances in which the ALJ did not do so, Defendant contends that the ALJ adequately explained his decision and appropriately accorded the opinion of the state agency's physicians more weight. *Id.* at 5. As a result, Defendant argues that Magistrate Judge Robinson was incorrect in finding that the ALJ failed to appropriately consider the treating physician's medical opinion. *Id.* at 5–6. In response, Plaintiff argues that Magistrate Judge Robinson correctly found that the ALJ failed to appropriately apply the treating physician rule. *See* Pl.'s Reply Obj. R&R at 1–5. Plaintiff maintains that the ALJ did not provide a sufficiently detailed explanation for why he was not adopting the treating physician's opinion. *Id.* Rather, Plaintiff argues that the ALJ explained his decision to disregard

7

the treating physician's recommendation in conclusory sentences. *Id.* Plaintiff, therefore, asks this Court to adopt the Magistrate Judge's Report and Recommendation. *Id.* For the reasons set forth below, this Court agrees with Magistrate Judge Robinson's ultimate conclusion that the ALJ failed to adequately explain his reasoning with respect to his findings about the claimant's ability to sit or stand for prolonged periods of time.

The treating physician rule requires that an ALJ give a treating physician's medical opinion "substantial weight" when determining whether an applicant is disabled under the Act. *Williams v. Shalala*, 997 F.2d 1494, 1498 (D.C. Cir. 1993) (quoting *Poulin v. Bowen*, 817 F.2d 865, 873 (D.C. Cir. 1987)). This is "because a claimant's treating physicians have great familiarity with [the claimant's] condition." *Id.* Unless the treating physician's opinion is "contradicted by substantial evidence," the treating physician's opinion is "binding on the fact-finder." *Id.* (citation omitted).

If an ALJ "rejects the opinion of a treating physician," the ALJ must "explain his reasons for doing so." *Id.* (citing *Simms v. Sullivan*, 877 F.2d 1047, 1052–53 (D.C. Cir. 1989)). The ALJ can consider six factors when judging whether the treating physician's opinions are well supported: "(1) [the] length of the treating relationship and frequency of examination; (2) [the] nature and extent of the treating relationship; (3) [the] supportability [of the physician's conclusions]; (4) [the] consistency [of the physician's conclusions]; (5) [the physician's] specialization; and (6) other factors that tend to support or contradict the medical opinion." *Butler*, 353 F.3d at 1003 n.7 (citing 20 C.F.R. §§ 404.1527(d)(2)–(6), 416.927(d)(2)–(6)). That said, the ALJ does not need to reference all of these factors when explaining why he rejected the treating physician's opinion. *See Grant v. Astrue*, 857 F. Supp. 2d 146, 154–55 (D.D.C. 2012). Instead, the ALJ only needs to provide "good reasons" for according less than substantial weight

8

to the treating physician's findings. *See Turner v. Astrue*, 710 F. Supp. 2d 95, 106 (D.D.C. 2010) (quoting 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2)). As a result, citations to contradictory evidence can provide a sufficient explanation for why an ALJ discounted the weight of a treating physician's medical opinion. *See, e.g.*, *Holland v. Berryhill*, 273 F. Supp. 3d 55, 63–64 (D.D.C. 2017) (concluding that the ALJ's decision to give relatively little weight to the treating physician's opinion was supported by substantial evidence because the treating physician's opinion "was inconsistent with the findings of all other providers" and "because it was seemingly inconsistent with her own treatment notes").

Here, the ALJ did adequately explain his reasons for according less weight to some of Dr. Kalhorn's opinions. For example, in his Report, the ALJ stated that he gave "minimal weight" to Dr. Kalhorn's conclusion that "the heaviest weight [Plaintiff] could lift and carry is less than 10 pounds." Judge Krasnow's Decision at 21. The ALJ went on to explain that he was according this finding less weight because "it is inconsistent with his conclusion that the claimant could lift and carry 10 pounds frequently." *Id.* An ALJ is generally not expected to provide more detail than citing to the contradictory evidence in his report. *Compare Williams*, 997 F.2d at 1499 (finding that the fact that "the ALJ did not expressly state his reason for not applying the treating physician rule is of no moment because he noted the contradictory evidence in the record, which . . . supplies the reason") *and Grant*, 857 F. Supp. 2d at 154 (concluding that "the ALJ's decision noted the contrary evidence in the record, [which] satisfies the requirement to explain the rejection of the treating physician's opinion") *with Ward v. Berryhill*, 246 F. Supp. 3d 202, 209 (D.D.C. 2017) (remanding a social security matter because the ALJ failed to reference or discuss the treating physician's medical opinion in his ruling). Therefore, the ALJ in this case did not

9

misapply the treating physician rule when he accorded Dr. Kalhorn's opinion about Plaintiff's ability to lift and carry 10 pounds less weight.[1]

Similarly, the ALJ satisfactorily explained his reasons for not adopting Dr. Kalhorn's assessment that Plaintiff "would have flares [of back pain that would] prevent[ ] her from working." Judge Krasnow's Decision at 21. An ALJ is not required to consider a treating physician's opinions if they are "conclusory in nature and not culled from objective medical evidence." *Turner*, 710 F. Supp. 2d at 107. *See also Grant*, 857 F. Supp. 2d at 154 (finding that the ALJ did not have to accord a physician's opinion that the plaintiff was "totally disabled and not fit for employment" controlling weight because the statements were conclusory in nature); 20 C.F.R. §§ 404.1527(e)(1) ("A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."). Here, the ALJ noted that "Dr. Kalhorn was not able to provide a clear answer and did not define the frequency of the absences caused by a flare of back pain." Judge Krasnow's Decision at 21. Therefore, the ALJ accorded little weight to Dr. Kalhorn's opinion about Plaintiff's ability to work. *Id.* Because the ALJ found that Dr. Kalhorn's statements were conclusory and not supported by the record, the ALJ did not need to defer to Dr. Kalhorn's opinion that Plaintiff's back flares would prevent her from working.

However, the ALJ did *not* sufficiently explain why he determined that Dr. Kalhorn recommended that Plaintiff could sit or stand for only six hours. On the relevant form, Dr. Kalhorn had circled the number six but had written in the number four. *See* Administrative Record at 500, ECF No. 12-9. The ALJ interpreted the form to mean that Dr. Kalhorn believed

---

[1] Even if the ALJ had erred in this respect, it would likely be harmless error given that the ALJ concluded that the claimant could work as a telemarketer—a position likely to require little, if any, lifting. *See* Judge Krasnow's Decision at 22.

10

that Ms. McCraw could only sit or stand for 6 hours but failed to explain how he reached that conclusion. Judge Krasnow's Decision at 21. As Plaintiff highlights, there is some ambiguity about whether Dr. K concluded that Plaintiff could stand for four or six hours. *See* Pl.'s Mot. J. Reversal at 10–11. The treating physician rule requires an ALJ to explain his reasons for choosing to accord one medical opinion more weight than another. An "ALJ [must] build an 'accurate and logical bridge from the evidence to [his] conclusion' so that . . . [a court] may assess the validity of the agency's ultimate findings and afford a claimant meaningful judicial review." *Lane-Rauth v. Barnhart*, 437 F. Supp. 2d 63, 67 (D.D.C. 2006). Here, the ALJ failed to explain why he concluded that Dr. Kalhorn had found that Ms. McCraw could sit or stand six hours instead of four. This distinction is important because, presumably, a telemarketing position requires a great deal of sitting. Therefore, this Court agrees with the Magistrate Judge's bottom-line conclusion that the ALJ failed to apply the treating physician rule and provide an adequate rationale for his interpretation of Dr. Kalhorn's medical opinion.

### B. Remand for Award of Benefits

Defendant also objects to the Magistrate Judge's recommendation that the case be remanded to the SSA for the award of benefits. *See* Def.'s Obj. R. & R. at 6–8. Defendant argues that, even if the ALJ inappropriately applied the treating physician rule, the appropriate disposition is to remand the case for further proceedings. *Id.* Defendant contends that the facts on the record do not compel the ALJ to accord Dr. Kalhorn's opinion controlling weight. Rather, if the ALJ did not adequately explain his reasons for discounting the treating physician's medical opinion, then Defendant argues that the case should be remanded so that the ALJ has an opportunity to further explain his reasoning. *Id.* Plaintiff disagrees with Defendant's assessment of the record. *See* Pl.'s Reply Obj. R. & R. at 5–7. Instead, Plaintiff argues upon remand "no

new facts would be explored." *Id.* at 6–7.  Therefore, Plaintiff argues that remand for award of benefits is appropriate.  *See id.*

The Social Security Act allows unsuccessful claimants to seek judicial review of an ALJ's decision to deny a claim for disability benefits.  *See Ademakinwa v. Astrue*, 696 F. Supp. 2d 107, 110–11 (D.D.C. 2010).  When a district court reviews a decision by an ALJ, the "district court has discretion 'to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner, with or without remanding the case for a rehearing'" *Id.* (quoting 42 U.S.C. § 405(g)).  A court generally will not exercise its discretion and remand a decision solely for the award of benefits unless "the record . . . has been thoroughly developed, and a hearing would merely function to delay the award of benefits." *Martin v. Apfel*, 118 F. Supp. 2d 9, 18 (D.D.C. 2000).  *See also Lockard v. Apfel*, 175 F. Supp. 2d 28, 33–34 (D.D.C. 2001) (reversing a denial of disability benefits because the ALJ incorrectly applied legal standards to a fully developed record at the final stage of the five-step process).  If there is ambiguity about the ALJ's reasoning or the record itself, a court will likely remand to the SSA for further proceedings.  *See, e.g.*, *Lane-Rauth*, 437 F. Supp. 2d at 69 (remanding the case for further proceedings because the ALJ failed to adequately explain how he assessed the claimant's residual functional capacity); *Sloan v. Astrue*, 538 F. Supp. 2d 152, 155–57 (D.D.C. 2008) (remanding a case for further fact-finding because the ALJ had asked the vocational expert a faulty question about the claimant's employment prospects).

Here, reversal was inappropriate because there was an ambiguity about the ALJ's reasoning.  As discussed previously, the ALJ failed to adequately explain how he resolved the ambiguity in Dr. Kalhorn's opinion regarding Ms. McCraw's ability to sit or stand for several hours at a time.  The ALJ determined that Dr. Kalhorn had found that Ms. McCraw could sit or

12

stand for only six hours without rest. Judge Krasnow's Decision at 20–21. This finding caused him to weigh the agency's experts' opinions more heavily. *Id.* at 21. But an ALJ's factual findings at this stage have ripple effects for the rest of the five-step process. At step three, the ALJ determines what the claimant's residual functional capacity is. *See Sloan*, 538 F. Supp. 2d at 154–55. Then, at steps four and five, an ALJ asks a vocational expert whether the claimant can occupy a prior job and, if not, whether she has employment opportunities given the limitations identified in step three. *Id.* Therefore, should the ALJ's findings about Ms. McCraw's ability to sit or stand for long periods of time change upon remand, the ALJ will need to posit new questions to the vocational expert in the next stage. And, even if the ALJ's conclusion about whether Ms. McCraw can occupy her prior job as a telemarketer changes, he must still consider under step five whether there are other jobs in the national economy available to her given her limitations. On the current record, this Court has no basis to make a determination concerning step five. Because the Court cannot be certain that the record is fully developed such that "a rehearing would merely function to delay the award of benefits," *Martin*, 118 F. Supp. 2d at 18, this Court remands this case to the SSA for further proceedings consistent with this Opinion.

## V. CONCLUSION

For the foregoing reasons, this Court grants Defendant's Motion for Judgment of Reversal in part and remands this matter to the ALJ for further proceedings consistent with this Opinion. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated: September 5, 2019                                       RUDOLPH CONTRERAS
                                                                United States District Judge